IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAQUILLE DIGGINS, #M18372, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cv-00242-NJR |
| | ) |
| JOHN COE, C/O OCHE, and | ) |
| C/O GILREATH, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Shaquille Diggins, an inmate currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts that Defendants violated his rights when they subjected him to a painful and humiliating anal cavity search.

## Merits Review Under 28 U.S.C. § 1915A

The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## The Complaint

On November 23, 2015, officers from the Orange Crush tactical team entered Plaintiff's cell and ordered him to submit to a visual strip search. (Doc. 1, p. 5). Plaintiff complied. He removed all of his clothing, opened his mouth for visual inspection, and lifted his feet and genitalia. Plaintiff also turned around, bent over, and spread his buttocks apart as he was ordered to do. *Id*. After finding nothing in or on Plaintiff's body, officers ordered Plaintiff to get dressed and then handcuffed him behind his back. *Id*.

As Plaintiff was being escorted out of his housing unit and taken to the gym with the other inmates, he was pulled out of line by Defendants Oche and Gilreath, officers with the Orange Crush tactical team, and taken to the healthcare unit. *Id*. at 6. When Plaintiff asked Defendants Oche and Gilreath why he was being taken to the healthcare unit, he was told that they wanted to conduct an anal cavity search on him. *Id*. Plaintiff protested. He told Oche and Gilreath that there was nothing in his buttocks and that he would not let Defendant Coe, the medical doctor who was to perform the search, violate him like that. Defendants Oche and Gilreath then used excessive force to hold Plaintiff down so that Defendant Coe could perform a digital anal cavity search on Plaintiff. *Id*. Nothing was found as a result of the search. *Id*. Plaintiff describes the experience as akin to being raped, battered, and sexually assaulted. *Id*.

As they were leaving the healthcare unit, Plaintiff asked Defendants Oche and Gilreath

why they had subjected Plaintiff to the search. Defendant Gilreath responded that he knew Plaintiff liked it. This response caused other officers standing in the healthcare unit to laugh at Plaintiff. *Id*. at 7. When Plaintiff asked to see a warden or a supervisor, Defendants Oche and Gilreath told him to shut up and that no one was going to help him. *Id*. Defendants Oche and Gilreath then proceeded to tell other correctional officers in the gym that Plaintiff had just been "finger fucked" and that it might hurt for him to sit down. *Id*. Attached to the complaint are affidavits from two inmates who were in the gym and heard Defendants Oche and Gilreath laughing about what had happened to Plaintiff and telling others that Plaintiff had "fingers stuck in his ass and liked it." *Id*. at 11-12. When Plaintiff protested and continued to ask for a warden, several unnamed Orange Crush officers grabbed him and took him to segregation. *Id*. at 7, 11-12.

## Analysis

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:** **Defendants Oche and Gilreath violated Plaintiff's rights under the Eighth Amendment when they used excessive force in the process of forcing Plaintiff to submit to an anal cavity search.**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and

sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir.2004).

Plaintiff alleges that Defendants Oche and Gilreath used excessive force against him in the process of forcing him to submit to an anal cavity search. Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff has articulated a colorable excessive force claim and he may proceed on this claim against Defendants Oche and Gilreath.

**<u>Strip Search Claims</u>**

> **Count 2:** Defendants Oche, Gilreath, and Coe violated Plaintiff's right to be free from unreasonable searches under the Fourth Amendment when they subjected him to a humiliating anal cavity search.
>
> **Count 3:** Defendant Oche, Gilreath, and Coe violated Plaintiff's rights under the Eighth Amendment to be free from cruel and unusual punishment when they subjected him to a painful and humiliating anal cavity search.

Courts have long recognized that strip searches and body-cavity searches represent one of the most serious invasions of personal rights. *See Bell v. Wolfish,* 441 U.S. 520, 576–77 (Marshall, J., dissenting) ("the body cavity searches of MCC inmates represent one of the most grievous offenses against personal dignity and common decency"); *see also Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1272 (7th Cir. 1983) ("we can think of few exercises of authority by the state that intrude on the citizen's privacy and dignity as severely as the visual anal and genital searches practiced here.") At the same time, the United States Supreme Court has recognized that

the "'[l]oss of freedom of choice and privacy are inherent incidents of confinement.'" *Hudson v. Palmer,* 468 U.S. 517, 528 (1984) (quoting *Bell*, 441 U.S. at 537 (1979)).

Body cavity searches may implicate an inmate's rights under the Fourth and Eighth Amendments. Under the Fourth Amendment, the question is whether the search was reasonable:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell*, 441 U.S. at 559. Under the Eighth Amendment, an inmate states a claim "when he plausibly alleges that the strip search in question was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security in prisons." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015).

As an initial matter, the Court finds it important to note that the search at issue in this case did not entail simply a visual inspection of Plaintiff's genitals. Although even visual strip searches have given courts "pause," such searches have typically been found to be less objectionable than searches that involve touching an inmate or probing into his or her body cavities. *See e.g., Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1523 (2012) (holding that routine visual strip-searches of pretrial detainees, without individualized suspicion that a detainee was concealing contraband, were reasonable under the Fourth Amendment but noting that there "may be legitimate concerns about the invasiveness of searches that involve the touching of detainees."); *see also King*, 781 F.3d at 900 (rejecting claim that a prolonged visual inspection might amount to a violation under the Fourth Amendment on the basis that it did not involve "any intrusion into his body.")

In this case, Plaintiff asserts that there was no reason for correctional officers to believe that he was hiding something in his anal cavity, and in fact, the search produced nothing. Of course, just because Defendants did not find anything does not prove that the search was unreasonable, but it does lend weight to Plaintiff's assertion, at least at this stage, that it was not justified. Moreover, even "where prison authorities are able to identify a valid correctional justification for the search, it may still violate the Eighth Amendment if 'conducted in a harassing manner intended to humiliate and cause psychological pain.'" *King*, 781 F.3d at 897 (quoting *Mays v. Springborn,* 575 F.3d 643, 649 (7th Cir. 2009). Here, it is alleged that Defendants Oche and Gilreath viciously mocked Plaintiff in front of other inmates and officers. This suggests that the search may, in fact, have been "driven by a desire to humiliate or harass." *Id*. at 898. For these reasons, the Court finds that Plaintiff has articulated actionable Fourth and Eighth Amendment claims against Defendants Oche, Gilreath, and Coe, and he may proceed on each of these claims.

**Supplemental State Law Claims**

In addition to Counts 1-3 discussed above, Plaintiff asserts the Illinois state law claim of battery. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc*., 72 F.3d 1294, 1299 (7th Cir. 1995)). Plaintiff's state law claim arises out of the same events that gave rise to his federal claim. As such, the Court will exercise supplemental jurisdiction over this additional state law claim.

Plaintiff may proceed against Defendants Oche, Gilreath, and Coe on his Illinois state law battery claim **(Count 4)**.

## Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) remains **PENDING** and shall be referred to United States Magistrate Judge Wilkerson for a decision. Because Plaintiff has been granted IFP status, his motion for service of process at government expense (Doc. 4) is unnecessary and **DENIED as moot**.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff may proceed on **COUNTS 1-4** against Defendants **OCHE, GILREATH,** and **COE**.

The Clerk of Court shall prepare for Defendants **OCHE, GILREATH,** and **COE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address

shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Wilkerson for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court,

who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 6, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**